STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff, H. OROZCO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| H. OROZCO,<br><br>Plaintiff,<br><br>v.<br><br>KATHRYN BARGER, JANICE HAHN, SHEILA KEUHL, HOLLY MITCHELL, HILDA SOLIS, MICHAEL ANTONOVICH, DON KNABE, ZEV YAROSLAVSKY, MARK RIDLEY-THOMAS, GLORIA MOLINA, JACQUELINE LACEY, STEPHEN L. COOLEY, MICHAEL DE ROSE, DIANE C. LABRUSCIANO, KAREN THORPE, ERIKA JEREZ, ANN I. PARK, SARVENAZ BAHAR, JEFFREY B. MARGUILES, CHRISTINE GOODMAN, BRADLEY PAULEY, JEFF S. WESTERMAN, JEANNE L. NISHIMOTO, STANLEY S. BISSEY, ERIC A. ALTOON, MICHAEL FERN, JANA G. GARROTTO, THERESA A. LEETS, JASON R. PARNELL, JAMES A. SANTIAGO, IBIERE | **COMPLAINT**<br>(Damages pursuant to 42 U.S.C. § 1983)<br><br><br>**JURY DEMAND** |

1

**SECK, DENISE O. GASTELUM, ROBERT GLASSMAN, TERESA Y. HILLERY, JESSICA KRONSTADT, BENJAMIN G. SHATZ, DOUGLAS SILVERSTEIN, CAROLINE VINCENT, TAYLOR C. WAGNIERE, SANDRA K. WOOTTON, CYN YAMASHIRO, LOS ANGELES COUNTY BAR ASS'N, ARLENE BINDER, and 20 UNKNOWN NAMED DEFENDANTS,**

Defendants.

Plaintiff makes the following allegations, in support of the this complaint:

### JURISDICTION AND VENUE

1. Plaintiff is Hernan Orozco who is a person who was for at least 15 years, from 2007 to 2021, denied a trial and release from civil commitment due to all defendants' wrongful conduct, in delaying and obstructing plaintiff from having a hearing pursuant to Cal. Welfare & Institutions Code § 6601.5, *et seq*., who asserts federal claims, under 42 U.S.C. § 1983 against defendants, **KATHRYN BARGER, JANICE HAHN, SHEILA KEUHL, HOLLY MITCHELL, HILDA SOLIS, MICHAEL ANTONOVICH, DON KNABE, ZEV YAROSLAVSKY, MARK RIDLEY-THOMAS, GLORIA MOLINA, JACQUELINE LACEY, STEPHEN L. COOLEY, MICHAEL DE ROSE, DIANE C. LABRUSCIANO, KAREN THORPE, ERIKA JEREZ, ANN I. PARK, SARVENAZ BAHAR, JEFFREY B. MARGUILES, CHRISTINE GOODMAN, BRADLEY PAULEY, JEFF S. WESTERMAN, JEANNE L. NISHIMOTO, STANLEY S. BISSEY, ERIC A. ALTOON, MICHAEL FERN, JANA G. GARROTTO, THERESA A. LEETS, JASON R.**

2

**PARNELL, JAMES A. SANTIAGO, IBIERE SECK, DENISE O. GASTELUM, ROBERT GLASSMAN, TERESA Y. HILLERY, JESSICA KRONSTADT, BENJAMIN G. SHATZ, DOUGLAS SILVERSTEIN, CAROLINE VINCENT, TAYLOR C. WAGNIERE, SANDRA K. WOOTTON, CYN YAMASHIRO, LOS ANGELES COUNTY BAR ASS'N, ARLENE BINDER, and 20 UNKNOWN NAMED DEFENDANTS,** all of whom played some part in plaintiff's post-2007, continuing and continued, unconstitutional incarceration; and subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of plaintiff's federal claims.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

### THE PARTIES

3. Plaintiff unconstitutionally was incarcerated and denied his right to a speedy trial, and the named defendants were the perpetrators of and/or the causes of and/or are legally responsible for plaintiff's captivity, and as are well are the unknown named defendants, whose true identities presently are unknown, who participated in the wrongful acts alleged herein, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, and they are persons who may have engaged in some conduct that is culpable with respect to plaintiffs. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions that resulted in the wrongs herein alleged.

4. Defendants each and all are sued only in both their individual and official capacities, except for defendants who previously held their positions but no longer hold their official positions, and only those defendants are sued only in their individual capacities.

3

5. Plaintiff is a person who has been subjected to deliberate indifference to constitutional violations by defendants, who was injured and damaged thereby, and who continues to suffer as a direct result of those violations by defendants.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies of the County of Los Angeles, the Los Angeles County Bar Ass'n, and the County Bar Ass'n IDF Program.

### ALLEGATIONS COMMON TO EACH COUNT

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this complaint.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. Plaintiff was a prisoner who was held against his will.

10. Defendants, by their actions and inactions engaged in clearly unconstitutional conduct, with deliberate indifference, and arbitrarily deprived plaintiff of his constitutional rights to life, fundamental liberty, property, and to be free from prolonged and excessive, involuntary incarceration.

### I. INTRODUCTION

11. Plaintiff was jailed for more than 20 years awaiting trial. In violation of his constitutional rights, he never was brought to trial by his IDP defender attorney,

4

defendant Binder, despite his repeated requests that his case be brought to trial. After Binder was removed as his attorney, the Los Angeles County Superior Court dismissed the civil detention action against him finding that the pre-trial detention was so presumptively prejudicial and oppressive that his due process rights were violated. The constitutional violations suffered by plaintiff resulted from the deliberate indifference to his circumstances by all defendants, who were aware of his long unconstitutional detention and acquiesced in the violation of plaintiff's civil rights. The purpose of the present action is to bring to light the complete failure of all defendants, the County of Los Angeles, and the individually-named defendants to carry out their statutory and ethical duties to their clients, as well as to bring attention to the injustice carried out by the present defendants, with respect to a large group of men who have been waiting in jail for decades. The purpose of the of this action is also to make examples of all defendants, to ensure that other similarly-situated public officials honor their promise to protect and defend the Constitution of the United States.

12. On November 3, 2021, the Los Angeles County Superior Court, Judge Daniel J. Lowenthal determined that plaintiff's Due Process rights were violated by the 14-year pre-trial detention, and held that "I can't find, beyond a reasonable doubt, that he [plaintiff herein] will engage in sexually violent predatory conduct if released. Therefore, I find the petition [to continue his incarceration] not to be true and order him discharged [from custody]."

13. Beginning in or about 2007, plaintiff was represented by attorneys from the Los Angeles County Bar Ass'n's Indigent Defense Programs ("IDP), principally defendant Binder.

14. Plaintiff filed his petition for release on March 28, 2007, which did not go to trial until 2021, because of the failures of the Los Angeles Superior Court, the Los Angeles County District Attorney's Office, the IDP, and its appointed

attorney, defendant Binder, and this was a violation of plaintiff's Due Process rights that warrants a judgment in plaintiff's favor against all defendants.

15. Beginning on Oct. 7, 2009, and continuing on each and all of the following dates, hearings and court appearances occurred in plaintiff's Superior Court case, and in each such instance the matter was continued or nothing occurred: Dec. 2, 2009, Jan. 6, 2010, Feb. 3, 2010, Feb. 25, 2010, Mar. 24, 2010, April 12, 2010, May 4, 2010, June 24, 2010, Aug. 20, 2010, Feb. 7, 2011, April 4, 2011, April 21, 2011, Aug. 23, 2011, Jan. 13, 2012, Jan. 26, 2012, May 3, 2012, Aug. 13, 2012, Aug. 31, 2012, Sept. 25, 2012, Sept. 19, 2013, Sept. 25, 2013, Jan. 14, 2014, Feb. 26, 2014, April 14, 2014, June 24, 2014, Sept. 14, 2014, Dec. 16, 2014, Jan. 14, 2015, April 10, 2015, May 6, 2015, Dec. 6, 2016, Feb. 22, 2017, March 13, 2017, March 20, 2017, March 22, 2017, May 10, 2017, July 12, 2017, Aug. 30, 2017, Dec. 13, 2017, Aug. 15, 2018, Dec. 5, 2018, March 19, 2019, Dec. 10, 2019, Jan. 2, 2020, Jan. 22, 2020, Jan. 23, 2020, Jan. 27, 2020, Feb. 20, 2020, on which last date defendant Binder was relieved as plaintiff's counsel.

16.-128. Reserved.

## COUNT 1

### DELIBERATE INDIFFERENCE, CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS, AS TO ALL DEFENDANTS

129. This action is brought pursuant to 42 U.S.C. §1983, for violation of plaintiff's rights under Sixth Amendment and Fourteenth Amendment of the U.S. Constitution.

130. Defendants are sued herein as administrators of the County's duty to provide competent legal representation to indigent defendants, and as to the prosecutors, they are sued for failure to discharge their duties to enforce plaintiff's constitutional rights.

131. Plaintiff is informed and believes, and thereon alleges, that defendants failed to timely bring plaintiff's case promptly to trial, as well as a large group of cases involving petitions seeking the indeterminate commitment of persons. By thus abandoning the present plaintiff and the other similarly-situated persons in their charge, said defendants allowed the present plaintiff, and other similarly-situated persons, to be held as pre-trial detainees for such inordinately long periods of time that their due process rights and their rights to a speedy trial were violated. Plaintiff, for example, spent 14 years waiting for his case to come to trial, until and before his case was dismissed for due process violations. Other similarly-situated persons remain in custody and have spent decades waiting for their cases to be brought to trial.

132. On or before plaintiff's underlying case/petition was dismissed, there existed within the County of Los Angeles and the IDP various customs and practices which caused the delay in the bringing to trial of such cases, including plaintiff's case and those of other similarly-situated persons, such that they all were made to unnecessarily spend many, many years as pre-trial detainees, waiting for their cases to be brought to trial, the years together totaling hundreds of years.

133. These massive delays in the bringing to trial of these types of cases were the result of the following unconstitutional customs and practices which: a. Failing to regularly bring their detainees to court for hearings, or to otherwise ensure that detainees were in court, or that they would appear by video conference, so as to conceal from detainees their delays in processing their cases in a timely manner; b. Failing to communicate to detainees the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts; c. Failing to obtain consent from detainees to continue hearing dates, trials dates as well as other deadlines which were in their control;

d. Waiving of detainees' appearance at hearings, without securing their authority to do so; e. Agreeing to repeated continuances sought by the prosecution; f. Ignoring requests from detainees to bring their case to trial promptly; g. Failing to meet reasonable deadlines in such cases; h. Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion; i. Allowing experts' reports to lapse or otherwise go stale; j. Concealing material facts from detainees; k. Concealing their misconduct from detainees; l. Failing to inform their clients of conflicts of interests; m. Failing to inform the court of conflicts of interest; n. Failing to bring cases to trial within the stipulated time period with the District Attorney's Office, after the passage of Proposition 83; o. Failing to file oppositions to motions and other petitions by the prosecution; p. Allowing cases to sit idle for years without meaningful progress; q. Failing to declare unavailability, such that long-delayed cases could be assigned to outside/independent counsel; r. Tolerating a conflict of interest, in violation of state bar ethics rules and standards, and failing to declare such conflicts so as to permit their detainees to file *Litmon* motions, after the extensive delays in the processing of their cases, s. After extensive delays on their part, failing to inform detainees of their right to file a motion under *People v. Litmon*, for the violation of their constitutional rights.

134. Defendants were aware of the inordinate and excessive delays that plaintiff and the other similarly-situated detainees were experiencing in the processing of their cases and that said cases were not being brought to trial in a timely basis. Defendants were aware of the customs and practices described above that existed and which were the causes of the failure to bring these cases to trial in a timely fashion.

135. Between 2007 and 2020, defendants learned of these delays and of the causes of cases not coming to trial in a timely basis through their required, regular

monitoring of the of the performance of the lawyers on the IDP. Said monitoring by defendants should have consisted of: a. Monthly meetings with the supervisors of IDP. b. Annual performance evaluations of the supervisors and staff of the IDP lawyers. c. Annual review of the status of each individual IDP case, the IDP lawyer case load, the IDP projections for staff needs and the expert needs conducted during the preparation of the IDP budget for presentation to the Los Angeles County Board of Supervisor defendants. d. Monitoring of appeals brought on behalf of detainees, including the review of appellate briefs, regarding and the review of the outcome of such appeals (see e.g., Arnold v. Superior Court, (2014) unpublished opinion involving SVP defendant who was challenging an SVP mental health examination and noting, critically that "defendant was evaluated by the hospital's department in 2007. But as of September 2013, his case had not been tried.")

136. The County supervisor defendants, especially, defendant Ridley-Thomas, and the L.A. County Bar and its management and the management of the IDP progam, learned of the above-mentioned dramatic trial delays in the SVP cases and of the causes of SVP cases not coming to trial in a timely basis, through their required, regular management, supervision and administration of the IDP program.

137. Defendants, especially Ridley-Thomas, were responsible for monitoring, supervision and management of the performance of the IDP program. .

138. Defendants were supposed to meet regularly with the IDP program, to discuss the issues surrounding its performance, its and its individual cases, including the present plaintiff's case. As early as 2008, Ridley-Thomas knew about the delays. He was informed of the significant backlog of work in the IDP cases and of the great delays that were occurring in the bringing of these cases to trial. As early as 2008, they Ridley-Thomas was made award of the names of the various

persons, including plaintiff, who were awaiting trial in their SVP case and Ridley-Thomas was informed of the number of years each SVP client had been waiting for trial.

139. Besides discussing the long delays in bringing the SVP cases to trial, defendant Mark Ridley-Thomas received numerous emails, memoranda, meeting summaries, and other written documents discussing the delay in processing these cases.

140. In regular meetings, which were often monthly, Ridley-Thomas discussed the SVP cases significant backlog, which had not reached trial in five years, 10 years and, eventually, 20 years. Annually, and often quarterly, Ridley-Thomas discussed SVP trial delays: a. Whether the delay in bringing these cases to trial violated the due process rights and speedy trial rights of the detainees, including plaintiff. b. The costs of bringing each case to trial; c. The reasons for the delays in bringing the cases to trial, d. The delays occasioned by the lapsing of the expert reports, e. The repeated requests for continuances by the SVP lawyers and prosecutors, including the District Attorney's office defendants. f. Evaluating the need in each SVP case for a declaration of "unavailability," so as to ensure that each such case was brought to trial, g. Implementing internal measures in the SVP cases to ensure that each SVP case got to trial in a timely fashion. h. Requesting that the supervising judge of the criminal division assign a specific judicial officer or courtroom for the exclusive handing of SVP cases.

141. Defendants, during every year between 2006 and 2020, were aware that the customs and practices in place for SVP cases were resulting in long, unconstitutional delays, including the present plaintiff's case, not getting to trial in a timely fashion. On a monthly basis during that time, some of defendants learned of continuances of trial dates and other related dates which continued to extend the time in which the SVP cases would come to trial. Notwithstanding this

information, said defendants failed to abolish, revoke, rescind or otherwise put a stop to these customs and practices. They failed to: a. Implement internal measures in the SVP cases to advance or otherwise expedite the bringing of the SVP cases to trial, b. Prioritize the oldest SVP cases, to ensure they would get to trial in an expedited fashion, c. Institute tighter controls over supervisors in the at IDP, to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly, d. Impose time limits for the bringing of SVP cases to trial, e. Establish a policy, custom or practice whereby the IDP would declare conflicts or declare "unavailability," in old SVP cases, so as to ensure that the courts could appoint competent counsel, to bring SVP cases to trial, and, f. Establish a policy, custom or practice whereby the IDP lawyers would declare conflicts of interest, or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion, so as to permit the court to appoint other, competent private counsel, to represent those detainees who had valid grounds to bring such motions.

142. Despite knowing of the enormous and great magnitude of the delays in bring hundreds of SVP cases to trial, defendants, especially Ridley-Thomas and some unknown named defendants in the IDP office, failed to take any reasonable measures to ensure that the constitutional rights of the SVP detainees, including plaintiff, were protected. Such failures constituted deliberate indifference to the due process rights and the speedy trial rights of plaintiff and other similarly-situated SVP detainees.

143. Defendants knowingly refused to terminate the acts, customs, practices and misconduct of their subordinates, which they knew were causing and would cause constitutional injury upon the SVP detainees in their charge. Said defendants failed to take reasonable measures to institute internal measures with respect to SVP cases, to address the long delays in getting SVP cases to trial, they failed to

institute new training of their subordinates in the management of SVP cases, so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline their subordinates for failing to get the SVP cases to trial in a timely fashion. All of these failures on the parts of defendants, especially Ridley-Thomas, constituted an acquiescence in, approval of, and ratification of, the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of SVP detainees, including plaintiff, and other similarly-situated SVP detainees.

144. Every year between 2008 and 2020, defendants were made aware of the extended delays in the SVP cases and of the resulting due process violations that the SVP detainees were suffering.

145. Ridley-Thomas and other defendants received in-person and written reports as to the great delays in bringing the SVP cases to trial. Defendants and Ridley-Thomas, each and all were responsible for the institution of internal measures with respect to SVP cases, to correct this unconstitutional condition but failed to do so. Such failures constituted deliberate indifference to the due process rights and the speedy trial rights of plaintiff and other similarly situated SVP detainees.

146. Defendants and especially Ridley-Thomas, knowingly refused to terminate the customs, practices and misconduct of their subordinates, which they knew were causing and would continue to cause constitutional injury upon the SVP detainees, including plaintiff. Said defendants had the authority to imose correctives and to impose discipline supervisorial staff in the SVP Unit for failing to bring SVP cases to trial on a timely basis. Said defendants failed to discipline their subordinates in the SVP Unit, they failed to do so, and they thereby ratified the great delays in the brining of the SVP cases to trial.

12

147. Defendants failed to institute internal measures with respect to SVP cases, to address the long delays in getting SVP cases to trial, they failed to order or otherwise institute new training in the management of SVP cases, so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline, subordinates, for failing to get the SVP cases to trial in a timely fashion. These failures on the part of defendants constituted an acquiescence in the constitutional deprivations that resulted, or constituted a reckless and callous indifference to the rights of SVP detainees, including plaintiff and other similarly situated SVP detainees.

148. Defendant Ridley-Thomas was particularly indifferent to a tremendous degree in his disregard for the violation of the constitutional rights of the SVP detainees in general and of the violation of the constitutional rights of plaintiff, specifically. Defendant Ridley-Thomas refused to allow the attorneys to "declare unavailability" in SVP cases, despite knowing the following: a. That SVP cases were significantly backlogged in the processing of SVP cases and that the majority of the SVP cases were years-delayed in getting to trial, and would continue to be so backlogged; b. That the SVP attorneys were excessively overworked with extremely heavy caseloads that could not be processed and brought to trial in a meaningful and effective way; c. That the caseload for SVP cases was exacerbated by a reduction in staff attorneys and administrative staff, such as paralegals and investigators; and, d. That less than 50% of the pending SVP cases would ever get to trial within 10 years.

149. Defendant Ridley-Thomas knew that this exacerbated backlog of SVP cases would be efficiently and meaningfully processed to trial by having attorneys "declare unavailability" in the older SVP cases, including plaintiff's case, so that the court could assign such cases to other agencies or panel attorneys for trial or other proceedings such as *Litmon* motions.

150. Defendant Ridley-Thomas forbade the declaration of "unavailability" in SVP cases, including plaintiff's case, despite knowing that failing to do so would cause years of prolonged unconstitutional detention of SVP detainees such as the present plaintiff.

151. As a result of the above deliberate acts and omissions of defendants plaintiff was damaged and injured as alleged above by being made to endure a wrongful 14-year pre-trial detention.

152. The conduct of defendants was done with deliberate indifference to the constitutional violations endured by the present plaintiff, and was done maliciously, wantonly, and oppressively. As such, punitive damages should be imposed, in an amount sufficient to punish said defendants and to deter future similar conduct by said defendants and others in similar positions.

## COUNT TWO
## FOR RELIEF MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS COUNTY OF LOS ANGELES AND LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER

153. PLAINTIFF repeats and realleges each and every allegation above as though fully set forth herein.

154. This action is brought pursuant to 42 U.S.C. §1983 for violation of plaintiff's rights under the Fourteenth Amendment.

155. Plaintiff's due process rights were violated by the 14-year delay in bringing his case to trial, as determined by the Los Angeles Superior Court and as alleged above in the first claim for relief. As a result of the aforementioned acts and omissions of defendants, plaintiff's Fourteenth Amendment due process rights were violated.

156. At the time of these constitutional violations by said defendants, had in place, and had ratified customs and practices which permitted and encouraged attorneys who at the County's and IDP's direction represented SVP cases, to delay

14

bringing SVP cases to trial and which violated the due process right of their SVP clients, including plaintiff.

157. These practices, customs, policies and procedures included: a. Failing to regularly bring their clients to court for hearings, or to otherwise ensure that their clients are in court or that they would appear by video conference, so as to conceal from their clients their delays in processing their cases in a timely manner; b. Failing to communicate to their clients the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts; c. Failing to obtain consent to continue hearing dates, trials dates as well as other deadlines which were in their control; d. Waiving of their clients' appearance at hearings without securing their clients' authority to do so; e. Agreeing to repeated continuances sought by the prosecution; f. Ignoring their clients' requests to bring their case to trial promptly; g. Failing to meet reasonable deadlines in their clients' cases; h. Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion; i. Allowing experts' reports to lapse or otherwise go stale; j. Concealing material facts from their clients; k. Concealing their misconduct from their clients; l. Failing to inform their clients of conflicts of interests; m. Failing to inform the court of conflicts of interest; n. Failing to bring cases to trial within the stipulated time proposed by the District Attorney's Office after the passage of Proposition 83; o. Failing to file oppositions to motions and other petitions by the prosecution; p. Allowing SVP cases to sit idle for years without meaningful progress; q. Failing to recommend to their supervisors that a declaration of unavailability be declared; r. Failing to recommend to their supervisors that a conflict of interest be declared so as to permit their SVP clients to file Litmon motions after extensive delays in the processing of their cases; and, s. After extensive delays on their part, failing to inform their clients of their right to

file a motion under *People v. Litmon*, for the violation of their constitutional rights.

158. Deliberate indifference to the civil rights of SVP detainees such as plaintiff, was evidenced by said defendants' ignoring the long delays in the bringing of SVP cases to trial and the long pre-trial detentions suffered by SVP clients.

159. Further deliberate indifference by these defendants was evidenced by the following acts and omissions: a. Failing to implement policies and procedures to advance or otherwise expedite the bringing of the SVP cases to trial; b. Failing to prioritize resources to the oldest SVP cases to ensure they would get to trial in an expedited fashion; c. Failing to discipline deputy public defenders who repeatedly failed to bring old SVP cases to trial; d. Failing to institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly; e. Failing to impose time limits for the bringing of SVP cases to trial; f. Failing to declare conflicts or to declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial; and, g. Failing to declare conflicts or declare "unavailability" in those older SVP cases that were subject to a Litmon motion so as to permit the court to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

160. The foregoing acts, omissions, and systemic deficiencies are and were customs, practices, policies and procedures of defendant County of Los Angeles supervisors and former supervisors, and by ratifying such, these defendants permitted and encouraged attorneys representing SVP clients to delay in bringing SVP cases to trial in a timely fashion. This caused, permitted and/or allowed under official sanction the attorneys to believe that the long delays in bringing SVP cases to trial would not be objectively, thoroughly and/or meaningfully investigated and

that no negative consequences would befall them, all with the foreseeable result that said attorneys would greatly delay in bringing SVP cases to trial, and thereby violate the civil rights of the SVP detainees in their charge. Regrettably, many Los Angeles Superior Court judges went along with all of this, but they, regrettably, cannot be sued because they enjoy absolute, judicial immunity from suit.

161. As a direct and proximate result of the aforementioned acts alleged herein, plaintiff was detained for 14 years, in violation of his due process rights as alleged in the first claim for relief, which caused him serious and permanent injuries and have physically, psychologically, and emotionally impaired him permanently.

162. As a result of the above customs, practices, policies and procedures of defendant County of Los Angeles and of defendants, plaintiff was damaged and injured as alleged above by being made to endure a wrongful 14-year pre-trial detention.

**WHEREFORE**, plaintiff requests relief against each defendant, as follows:

1. Compensatory damages in the sum of $20,000,000.00;

2. Punitive damages in the sum of $180,000,000.00;

3. The costs of action;

4. Attorneys' fees; and,

6. Such other relief as is just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury of all issues.

**YAGMAN + REICHMANN, LLP**

By:   /s/  Stephen Yagman
**STEPHEN YAGMAN**

17